1                IN THE UNITED STATES DISTRICT COURT
                 NORTHERN DISTRICT OF ILLINOIS
2                     EASTERN DIVISION

3

4  UNITED STATES OF AMERICA,    )

5               Plaintiff,  )  Docket No. 13 CR 312

6           vs.         )

7  EDWARD J. NOVAK, et al.,    )  Chicago, Illinois
                         )  March 19, 2015
8             Defendants.  )  11:00 a.m.
                         )

9

10                      VOLUME 29
                TRANSCRIPT OF PROCEEDINGS
11    BEFORE THE HONORABLE MATTHEW F. KENNELLY, and a jury

12
   APPEARANCES:
13

14  For the Plaintiff:    UNITED STATES ATTORNEY'S OFFICE
                       BY:  MR. JOEL M. HAMMERMAN
15                           MR. RYAN S. HEDGES
                           MS. KELLY GREENING
16                           MS. DIANE MAC ARTHUR
                      219 South Dearborn Street
17                      Chicago, Illinois  60604

18
   For the Defendant:    HINSHAW & CULBERTSON, LLP
19                       BY:  MR. SERGIO E. ACOSTA
                      222 North LaSalle Street
20                      Suite 300
                      Chicago, Illinois  60601
21

22                      DRINKER, BIDDLE & REATH, LLP
                      BY:  MR. DANIEL J. COLLINS
23                      191 North Wacker Drive
                      Suite 3700
24                      Chicago, Illinois  60606

25

```
1                        MR. ROBERT G. CLARKE
                              123 West Madison
2                             Chicago, Illinois   60603

3
                         LAW OFFICES OF PATRICK E. BOYLE
4                             BY:  MR. PATRICK E. BOYLE
                              155 North Michigan Avenue
5                             Suite 562
                              Chicago, Illinois   60601
6

7                        COTSIRILOS, TIGHE, STREICKER, POULOS
                         & CAMPBELL, LTD.
8                             BY:  MR. TERENCE H. CAMPBELL
                                   MR. MICHAEL P. HOHENADEL
9                             33 North Dearborn Street
                              Suite 600
10                            Chicago, Illinois   60602,

11

12

13

14

15

16

17

18

19

20

21

22

23
                    LAURA M. BRENNAN - Official Court Reporter
24                      219 South Dearborn Street - Room 2102
                           Chicago, Illinois   60604
25                            (312) 435-5785
```

1    (The following proceedings were had in open court out of

2  the presence and hearing of the jury:)

3    THE CLERK:  Case 13 CR 312, USA v. Novak, et al.

4    THE COURT:  Good afternoon, or good morning, rather.

5    MR. CAMPBELL:  Good morning, Judge; Terry Campbell

6  and Mike Hohenadel on behalf of Mr. Nagelvoort, who is

7  present.

8    MR. ACOSTA:  Good morning, Judge; Sergio Acosta and

9  Dan Collins for Ed Novak, who is present.

10    MR. CLARKE:  Good morning, your Honor; Robert Clarke

11  and Patrick Boyle for Roy Payawal, who is present.

12    MR. HAMMERMAN:  Good morning, your Honor; Joel

13  Hammerman, Ryan Hedges, Diane MacArthur and Kelly Greening on

14  behalf of the United States.

15    THE COURT:  Okay.  I'm going to read the note.  It

16  says:

17    "Judge, we are at an impasse on one count of the

18  indictment.  Have reached decisions on the other counts.  We

19  have been discussing diligently for several hours and are not

20  making progress.  Are we allowed to not make decision on one

21  count?"

22    So what does the government propose?

23    MR. HAMMERMAN:  Our proposal would be to give them a

24  Silvern instruction but to also answer the question, your

25  Honor.

1          THE COURT:  When you say "give them a Silvern

2    instruction," you mean reread the last instruction?

3          MR. HAMMERMAN:  Yes.

4          THE COURT:  Defense?

5          MR. CAMPBELL:  My reaction is to answer it:  Yes, you

6    are allowed to not make a decision on one count.

7          MR. CLARKE:  We adopt that.

8          MR. ACOSTA:  And we agree, Judge.

9          MR. CAMPBELL:  It seems --

10         I will only add to that, Judge.  Given the first

11   question, which came on Tuesday, it is clear that they are

12   being diligent and attentive to detail.  This note certainly

13   indicates that they have discussed this.  It says "discussed

14   it diligently."  So I don't think there is a need to give them

15   that instruction.  They have obviously paid attention to it,

16   and it's one count out of 20-some odd counts.

17         THE COURT:  Okay.  Do you want to respond?

18         MR. HAMMERMAN:  We would agree that they're

19   responding diligently.

20         And we think, and we're mindful of the Court's

21   statement for the last note, that the Seventh Circuit has

22   indicated a preference to have questions answered.  We believe

23   that that would be appropriate here.  But, nevertheless, even

24   though it has been two days, we think that giving the Silvern

25   instruction would be appropriate, too.

1    THE COURT:  So it's interesting because it's -- I

2  guess typically in this situation, at least in my experience,

3  it would be the defense who would be saying, don't give them

4  the Silvern instruction, but, you know, things are different.

5    So I guess my question is:  If there's an objection

6  to rereading that instruction, is there a problem with me

7  giving it over objection?  I mean, I think probably the answer

8  is no, but I'm not a hundred percent sure it's no, as I sit

9  here.

10    MR. HAMMERMAN:  I am not yet certain of that either.

11  Can you give us a few minutes to take a look?

12    THE COURT:  Yes.

13    (Brief interruption.)

14    THE COURT:  This can be off the record.

15    (Brief off-the-record discussion.)

16    MR. HAMMERMAN:  Can we have one moment, your Honor?

17    THE COURT:  Sure.

18    (Brief interruption.)

19    MR. HAMMERMAN:  So, your Honor, looking at our

20  cribbed jury manual, I won't purport to say that we have a

21  case that is directly on point with this situation that is

22  presented to the Court, but I would say that it appears that

23  this is going to be a matter that is within the Court's

24  discretion.  It's just as helpful.

25    It is the Court's determination whether or not the

1    jury is truly deadlocked yet and whether it wants to reread

2    Silvern.

3              THE COURT:  So the way I read it --

4              First of all, we have no idea what count it is.  It

5    doesn't say Count 1.  It says one count.  So it could be

6    count, you know, 15 or whatever.

7              The way I read it is that when they say they have

8    been discussing diligently for several hours, I understand

9    that, in context, that means they have been discussing this

10   one particular count for several hours.

11             And I want to add one other thing to that.  So

12   yesterday afternoon the officer came in and said:  What time

13   are they supposed to go to tonight?  And I said:  Well, why

14   are you asking?  And he said:  Well, they had said they wanted

15   to go until the same amount of time, but what if we needed a

16   little bit extra time, you know, just to finish up.  And I

17   told him to tell them if they need extra time, just send a

18   note and say you need more time.

19             So that is consistent with this in the sense that it

20   suggests that they basically have now been focused in the time

21   that they have been in here this morning, which is since 9:10,

22   on this one particular count and, who knows, perhaps some time

23   yesterday.

24             So, I mean, under normal circumstances, I think I

25   probably would reread the Silvern instruction, which is the

1  last instruction.  You know, I don't reread that without

2  saying, hey, I'm rereading something.  I mean, I don't try to

3  put on the pretense that I'm telling the jury anything new.

4  And I think that given the scenario, I think I'm just inclined

5  to tell them, yes, rather than tell them, keep working,

6  because it sounds like they have been focused on this one

7  count for a significant period of time.  They are not making

8  progress, and they have said that.  It is clear that they can

9  make a decision on less than all counts.  It's one out of

10  however many we have got here, 18 or 20.

11          MR. HEDGES:  Twenty.

12          THE COURT:  So I think what I'm going to say is yes.

13          You know, for a nanosecond, the thought crossed my

14  mind to say something like, keep trying, but I know I can't do

15  that because if you depart too far from the Silvern

16  instruction, then you are running a risk, or I would be

17  running a risk that --

18          MR. HAMMERMAN:  We all would.

19          THE COURT:  -- all of you would pay the price for.

20          MR. CAMPBELL:  Do you know is this note written by

21  the foreman?

22          THE COURT:  You know, let me see if I can compare it.

23  It isn't signed.

24          MR. CLARKE:  It looks like the same.

25          THE COURT:  It's the same handwriting.  I say this as

1    a nonqualified handwriting expert.  It's the same handwriting.

2              MR. CAMPBELL:  Is there any other kind?

3              THE COURT:  Fair enough.

4              Off the record for a second.

5              (Brief off-the-record discussion.)

6              THE COURT:  Let me just write something here, and

7    give me a second and I will read it to you.

8         (Brief interruption.)

9              THE COURT:  I'm going to print it out so you can look

10   at it.  I will be right back out.

11        (Brief interruption.)

12             THE COURT:  Here are some copies.  Why don't you take

13   a look at that.

14        (Brief interruption.)

15             MR. BOYLE:  The date's wrong, Judge, for what that's

16   worth.

17             THE COURT:  You know, that's right because I cut and

18   pasted.  I used the old form.  Thanks for catching that.

19        (Brief interruption.)

20             THE COURT:  I quoted the note accurately, including

21   the grammatical errors, but not including the spelling error.

22             I'm not asking anybody to give up your objections or

23   anything like that, but in terms of form, is this okay?

24             MR. CAMPBELL:  Yes.

25             MR. BOYLE:  Yes, your Honor.

1          THE COURT:  Okay.  So I'm just going to read it into
2    the record, and we'll get you copies.
3          Members of the jury, thank you for your question.
4    Your question reads as follows.  It then quotes the question
5    verbatim.
6          It then goes on to say:
7          The answer is yes.  You are permitted to make a
8    decision that does not include the count on which you say you
9    have reached an impasse.
10         So I'm going to send that in.  Just sit tight, and
11   we'll get you copies of it momentarily.
12         Pam, if you can just wait here, I will bring it right
13   back.
14         (Recess at 11:20 a.m.)
15
16
17
18
19
20
21
22
23
24
25

1     IN THE UNITED STATES DISTRICT COURT
      NORTHERN DISTRICT OF ILLINOIS
2       EASTERN DIVISION

3

4 UNITED STATES OF AMERICA,  )
             )
5       Plaintiff, ) Docket No. 13 CR 312
             )
6      vs.    )
             )
7 EDWARD J. NOVAK, et al.,  ) Chicago, Illinois
             ) March 19, 2015
8      Defendants. ) 12:30 p.m.
             )

9

10         VOLUME 29
      TRANSCRIPT OF PROCEEDINGS
11  BEFORE THE HONORABLE MATTHEW F. KENNELLY, and a jury

12
  APPEARANCES:
13

14 For the Plaintiff:  UNITED STATES ATTORNEY'S OFFICE
          BY: MR. JOEL M. HAMMERMAN
15           MR. RYAN S. HEDGES
           MS. KELLY GREENING
16           MS. DIANE MAC ARTHUR
         219 South Dearborn Street
17         Chicago, Illinois  60604

18
  For the Defendant:  HINSHAW & CULBERTSON, LLP
19          BY: MR. SERGIO E. ACOSTA
         222 North LaSalle Street
20         Suite 300
         Chicago, Illinois   60601
21

22         DRINKER, BIDDLE & REATH, LLP
          BY: MR. DANIEL J. COLLINS
23         191 North Wacker Drive
         Suite 3700
24         Chicago, Illinois   60606

25

MR. ROBERT G. CLARKE
123 West Madison
Chicago, Illinois   60603

LAW OFFICES OF PATRICK E. BOYLE
BY:  MR. PATRICK E. BOYLE
155 North Michigan Avenue
Suite 562
Chicago, Illinois   60601

COTSIRILOS, TIGHE, STREICKER, POULOS
& CAMPBELL, LTD.
BY:  MR. TERENCE H. CAMPBELL
MR. MICHAEL P. HOHENADEL
33 North Dearborn Street
Suite 600
Chicago, Illinois   60602

LAURA M. BRENNAN - Official Court Reporter
219 South Dearborn Street - Room 2102
Chicago, Illinois   60604
(312) 435-5785

1    (The following proceedings were had in open court out of
2    the presence and hearing of the jury:)
3         THE COURT:  All right.  All of the same lawyers are
4    here.  All the defendants are here.
5         The jury has sent out a note saying:
6         "We have reached a final verdict on all but one
7    count.  We filled and signed out all the forms and have left
8    the one count blank."
9         So, Pam, if you can have the officer bring the jury
10   out.
11        MR. CAMPBELL:  Judge, do you allow lawyers to talk to
12   jurors afterwards?
13        THE COURT:  No.  I will tell the story some other
14   day.  There was a lawyer with a law firm that ruined it for
15   everybody, as your kindergarten teachers once told you.
16        MR. CAMPBELL:  It wasn't Poulos, was it?
17        THE COURT:  No, it was a civil case actually and kind
18   of a pretty awful situation for the poor juror involved.
19    (The following proceedings were had in the presence and
20   hearing of the jury:)
21        THE COURT:  Okay, you can all have a seat.
22        The jury has sent a note saying you have reached a
23   verdict on all but one count and you filled out all the forms
24   leaving that one blank.
25        Is that correct, Mr. Lawless?

1          JUROR:  Yes.

2          THE COURT:  All right.  You can hand the verdict

3    forms to the officer.

4       (Brief interruption.)

5          THE COURT:  Okay.  So I'm going to read these, and I

6    need the jurors to listen carefully because when I am finished

7    reading them, I'm going to ask all of you individually whether

8    what I just read were your verdicts and whether they're still

9    your verdicts.

10          Let me get them in the right sequence here.

11          Okay.  So I'm going to start with the verdict form

12   regarding Mr. Novak.

13          It reads as follows:

14          On Count 1, we, the jury, find the defendant guilty.

15   The same verdict is true on Counts 1 through 10, in other

16   words, a finding of guilty on each of those.

17          Count 11 is left blank.

18          And on Counts 12 through the end, 28, the verdict is

19   guilty.

20          So it's a finding of guilty on all counts except for

21   Count 11.

22          Regarding Mr. Payawal, on Count 1, we, the jury, find

23   the defendant guilty.

24          On Count 2, we, the jury, find the defendant not

25   guilty.

1          On Count 3, guilty.

2          On Count 4, guilty.

3          Count 5, not guilty.

4          Count 6, guilty.

5          Counts 7, 8, 9 and 10, not guilty.

6          Counts 11, 12, 13, 14, 15 and 16, guilty.

7          Counts 17 and 18, not guilty.

8          Counts 19, 20 and 21, guilty.

9          Counts 22 and 23, not guilty.

10         On Counts 24, 25, 26, 27 and 28, guilty.

11         Regarding Mr. Nagelvoort, on Counts 1, 2, 9 and 10,

12    the finding is guilty.

13         On Count 13, not guilty.

14         And the remaining counts, 14, 17, 18, 19, 22, 23, 27

15    and 28, the finding is guilty.

16         And all three of the verdict forms are signed by all

17    of the jurors.

18         So I'm going to ask each of you by name, and I

19    apologize if I can't match the names to faces, whether what

20    I've just read were your verdicts and whether they're still

21    your verdicts.  I'm going to do them in alphabetical order.

22         Mr. Dullard, were those your verdicts and are they

23    still your verdicts?

24         JUROR:  Yes.

25         THE COURT:  Ms. Glanz, were those your verdicts and

1    are they still your verdicts?

2            JUROR:  Yes.

3            THE COURT:  Mr. Jacobson, were those your verdicts

4    and are they still your verdicts?

5            JUROR:  Yes.

6            THE COURT:  Mr. Koerner, were those your verdicts and

7    are they still your verdicts.

8            JUROR:  Yes.

9            THE COURT:  Mr. Lawless, were those your verdicts and

10   are they still your verdicts?

11           JUROR:  Yes.

12           THE COURT:  Ms. Molenar, were those your verdicts and

13   are they still your verdicts?

14           JUROR:  Yes.

15           THE COURT:  Ms. Perurach, were those your verdicts

16   and are they still your verdicts?

17           JUROR:  Yes.

18           THE COURT:  Mr. Richardson, were those your verdicts

19   and are they still your verdicts?

20           JUROR:  Yes, sir.

21           THE COURT:  Ms. Rogala, were those your verdicts and

22   are they still your verdicts?

23           JUROR:  Yes.

24           THE COURT:  Ms. Semmler, were those your verdicts and

25   are they still your verdicts?

1    JUROR:  Yes.

2    THE COURT:  Ms. Szmurlo, were those your verdicts and

3    are they still your verdicts?

4    JUROR:  Yes.

5    THE COURT:  And, Ms. Vargas, were those your verdicts

6    and are they still your verdicts?

7    JUROR:  Yes.

8    THE COURT:  All right.  That completes your service

9    in this case.  I want to thank you.  It has been a very --

10   you've been here pretty darned close to two months, eight

11   weeks I think altogether.  And I know it's a very large

12   commitment of your time, and I appreciate it, and the system

13   does not work, as I said at the beginning, without people like

14   you who are willing to step up to the plate and serve.

15   I know you have been here for a long time, and if

16   anybody wants to leave, please feel free to go right away.  I

17   have to spend literally about three or four minutes with the

18   lawyers.  I would like to come back and thank you individually

19   and find out if there is anything we can do to improve things

20   and answer any questions you might have.  But if you want to

21   go, please feel free to do that, and you're excused from

22   further service.

23   (Jury excused.)

24   THE COURT:  So we need to set sentencing dates, and

25   the normal interval is going to fall right in the middle of

1    when the next trial is.  So the first thing I'm going to do is

2    set a deadline for posttrial motions.  It's going to be four

3    weeks.  So posttrial motions are due by the 16th of April.

4    That is four weeks from today.

5         MR. ACOSTA:  Judge, I'm sorry.  Can we have at least

6    six weeks?

7         THE COURT:  That's fine.

8         MR. ACOSTA:  Thank you.

9         THE COURT:  What did I just say, the 16th?  So let's

10   make it the 30th of April.

11        So normally we would be going in June, but I'm going

12   to make it July because June runs into other issues.  I'm

13   going to be out for part of June.  We have got another trial

14   set for part of June.  So let me just pull July up on my

15   calendar here.

16        And everybody who is not up here can sit down.  You

17   don't have to stay standing up.

18        So I guess it makes sense to not try to do more than

19   one on one day.  So I guess what I would like to look at is

20   the week of the 13th of July and maybe do them on successive

21   days.  And who knows, there may be some adjustment to that,

22   but just from a starting-off point.  So is that week any

23   problem for you all?

24        MR. HAMMERMAN:  July, no.

25        THE COURT:  Okay.  So I'm just going to go in the

1  same sequence as in the indictment.

2  So the idea would be to set Mr. Novak's sentencing

3  for the 14th of July at 1:30, Mr. Payawal's for the 15th of

4  July at 1:30, and Mr. Nagelvoort's for the 16th of July at

5  1:30.

6  Are those dates a problem for any of you all?

7  MR. CLARKE:  No.

8  THE COURT:  Okay, so those are the dates.

9  So what do you want in terms of amount of time to

10  submit the government's version, more than the 14, I'm

11  assuming?

12  MR. HAMMERMAN:  Yes, please.

13  THE COURT:  We will make it -- you tell me.  28?

14  MR. HAMMERMAN:  28 is great.

15  THE COURT:  Fine.  So the government's version is to

16  be submitted to the probation office by the 16th of April.

17  If the defendants want to submit a defense version to

18  the probation office, that needs to be by the 30th of April.

19  The presentence report -- I've got to think this

20  through here.

21  (Brief interruption.

22  THE COURT:  The presentence report is due for each of

23  the defendants on the 4th of June.  And the defendants'

24  sentencing memorandum for each defendant is due two weeks

25  before the date.  So count backwards 14 days.

1      So for Mr. Novak, that would mean the 30th of June;

2  for Mr. Payawal, it would mean the 1st of July; for Mr.

3  Nagelvoort, the 2nd of July.

4      The government's corresponding memorandum is due a

5  week before the sentencing, so seven days after.

6      Are there any other issues we need to take up before

7  we stop?

8      Hearing nothing.

9      MR. HAMMERMAN:  One moment, your Honor.

10     THE COURT:  Yes.

11   (Brief interruption.)

12     MR. HAMMERMAN:  I think it's the only issue, your

13  Honor.  Obviously, the forfeiture issues will need to be

14  decided at the time of sentencing.

15     THE COURT:  Yes.  So here's what I would suggest you

16  do on the forfeiture.  Confer.

17     MR. HAMMERMAN:  Okay.

18     THE COURT:  And maybe if you can get me like a --

19  we'll call it a status report, like maybe in a week or so,

20  just giving me a proposal as to how to deal with it.

21     MR. HAMMERMAN:  Okay.

22     THE COURT:  I mean, whether it's going to be --

23  there's going to be stipulations or whether it's going to be

24  something I'm going to have to have a hearing on or whatever,

25  just try to figure out.  If you need more than seven days,

1   just call up.

2           MR. HAMMERMAN:  Can we make it two weeks?

3           THE COURT:  Let's make it 14 days, yes.

4           Let's say status report on forfeiture is due by

5   whatever two weeks from today is.  It's the 2nd of April, I

6   think.

7           Do we have a status hearing on the cases that are set

8   for June?

9           MR. HEDGES:  I don't think so.

10          MR. HAMMERMAN:  I don't think we do.

11          THE COURT:  Go back and check and figure out if we

12  do, and, if not, call Pam and we'll set one.  So we need to

13  figure that out.

14          Okay.  I would suggest maybe sending somebody up

15  tomorrow to get exhibits, including the ones that are back

16  over in there, and these --

17          MR. HAMMERMAN:  We're going to take these with us.

18          THE COURT:  Yes, but I'm talking about the binders

19  and whatnot.

20          MR. HAMMERMAN:  Okay.

21          THE COURT:  Okay.  Anything else?

22          MR. HAMMERMAN:  No, your Honor.  I think the

23  conditions of bond are continued.

24          THE COURT:  Same conditions.

25          MR. ACOSTA:  Thank you.

1       MR. CAMPBELL:  Thanks your Honor.

2

3       (Which were all the proceedings had in the

4       above-entitled cause on the days and dates aforesaid.)

5

6

7                    C E R T I F I C A T E

8

9       I hereby certify that the foregoing is a true and

10      correct transcript of the above-entitled matter.

11

12

13      /s/ Laura M. Brennan                    March 19, 2015

14

15      _____          _____

16      Laura M. Brennan
        Official Court Reporter                    Date
        Northern District of Illinois

17

18

19

20

21

22

23

24

25